I may please the court again, your honors. This case is a little different in that the court found that the witnesses were credible and that their versions of the facts indeed conform to the reality that they suffer in Mexico. Nevertheless, the court... This puzzles me a little bit and maybe this is a question for the government as well as for you. The story told by the son is essentially the story told by the father and we have an adverse credibility finding in the first case and we have a... I won't even say not a lack of an adverse credibility finding. We have an affirmative credibility finding here even though it's the same story. What am I supposed to do with that? Well, I cannot tell you, Judge Fletcher, what the circumstances are in the decision-making of the two different judges, but I can only tell you that I believe that in both circumstances, the family was equally credible. In this particular case, Judge, we have the judge finding that the ownership of the land was not a particular social group that was protected and cognizable. Again, your honors, we believe that this case is like the Cordova versus Holder situation rather than the other cases that were heard by the court. And in that particular case, in the Cordova case, the court distinguished between general land holders and land holders that could be classified into a distinguished social group that could be identified by the community. May I ask, so are you claiming for Bernardo's case, are you claiming just the social group of the landowners of strategic lands, or is it also on the basis of family? Judge Miller, I'm claiming on both, on family and the land, both of them. But the judge at the trial level distinguished the cases and issued the decision based on the ownership of the land, and that's why I'm addressing that. But both of them. Okay. And if I could ask you about your family claim. You heard my colloquy with government counsel on the family claim in the other case, but having a little more trouble seeing how that works in Bernardo's case, because he is the one who actually owns the land. So they're trying to get him to sell the land. They don't care that he has a family, they just care that he has the land. So in what sense is his membership in his own family a reason for the people who are targeting him to be targeting him? Well, this particular land is three parcels of land. And under Mexican law, there is a concept called ejido land, which is parcels of land that are own communal. And Mr. Acosta, Mr. Bernardo Acosta purchased that land, but the land essentially passes on to the children and to the, if he dies, to the wife and then to the children. So it's not a particular piece of land that is free of alienation. So it can be, it must be passed to the immediate family. If there is no immediate family, then it will go to the brothers and sisters. But that is the difference between a regular piece of land and this particular land, Your Honor. So the cartel knows this because it is generally known in Mexico about the ejido land versus private land. So pushing the children, killing the children, killing the family members makes particular sense in that they are getting rid of possible heirs to the landholding. But if that's true, it's possible that Judge Miller's question destroys the family group for all of those people who are, who have serious interest in the land, whether an immediate possessory interest, or I'm not sure I'm going to convey properly the Mexican law, but in American law, it would be, they've got some sort of a vested interest as vested remainder men. I'm not quite sure what the terminology would be in Mexican law, but if the children already have an interest in the land, then the question is, well, they may be targeted because of their interest in the land rather than because of their simply relationship to their father. So your answer might not, well, it's helpful in one sense, but perhaps not in another. Well, yes. Well, Your Honor, what happens is the land ownership in this case, it belongs to the ejido, to the communal entity. The members of the ejido get an ownership, but it is a conditioned ownership on that land. They can do whatever they want because of new laws that have been passed in Mexico, even sell the land to other ejido members or to a third party. But the children do not own the land. They only own the land if the father dies, but otherwise it is not vested. They have a conditional interest on the land, but not some vested interest at this point. I see. Okay. Mr. Romo, you said a few minutes ago, in response to Judge Miller's question, that you're asserting two groups, one landowners and two family-based. I understood your briefing to be more focused on family and not focused just on landowners standing alone. Can you tell me where in the briefing you're focused on just landowner status? Well, throughout, I made the argument, Your Honor, that the land ownership was essentially a right that they have, a fundamental right that they had to the ownership of the land and to not dispose of the land. And I did make the argument throughout the brief of Mr. Bernardo Acosta. I cannot point you right at this moment at that particular phrase or where it was, but I did. May I proceed? Please, yes. In Mexico, it continues to be this incredible problem with the cartels. In spite of the promises that are made by the different administrations, the cartel circumstance is not fixed. On the other hand, it continues to grow and to have more and more influence at the local level. And that's what we see here, a group of people who are dedicated to the drug dealership who are essentially in cahoots with the local police and the state police. And they have acted in that partnership with them to dispose people of their rights to rape, to murder, and essentially to take away land that they might need or there is of interest to them because of the value that the land has. And that's why I was making the comparison with the Chihuahua family. And the only reason I make that is because it is a famous case that has become famous because of the killings of the children and the parents and the circumstances of that family and the cartel coming in and simply attempting to take possession of the land by force and by killing family members, which is exactly what happened in this case. If you don't give me what you have, I'll kill you or I'll kill your son or I'll kill your brother. That's essentially the circumstance of this case. Complete abuse and a symbiotic relationship between the police, the government, the state, and the cartels. And it is becoming worse and worse every year for the Mexican people. Okay, that takes you up to the end of your time. Let's hear the government, but we will give you a chance to respond. Good afternoon, Your Honor. May it please the court. My name is Jacob Asheroff and I'm here on behalf of the Attorney General of the United States. Substantial evidence supports the agency determination that petition was not eligible for withholding removal. And the reason why, number one, if we look at petitions brief, he waived their important argument related to his particular social group and he didn't address the particularity and social distinction. And even if despite that waiver, right, even the court looks at the proposed particular social group of landholders of strategic lands in Mexico, it lacks particularity and social distinction. And to the extent there are two other groups that were raised in petitioners brief, the family, number one, and the family of individuals who own land, valuable land in Mexico, those arguments are not exhausted before the board. So with that in mind, the record evidence does not compel the conclusion that he would be harmed in Mexico on the count of protecting the ground. So counsel, I want to ask you a little bit about that. I mean, the record before the IJ was replete with reference to family and the witnesses, many of the witnesses were family members. So clearly family connection was at issue in the presentation of evidence. And then when petitioner goes to his appeal to the BIA, his notice of appeals specifically references, talking about a group based on family, his brief to the BIA also references, I'm talking about a group about a family. Why isn't that preserved? Well, I mean, my understanding is that it's also dependent on discussion. So the fact that he mentioned the family, but the group was not articulated in the way that it should have been. He specifically argued, and if we look at the record, he specifically argued that, you know, he was prosecuted in Mexico on account of a particular social group. And he framed it as landowners of strategic lands in Mexico, but his family group is, you know, it appears that he's, you know, he only mentions family, but it was, the family was apparently targeted in Mexico, because he owned the land and whoever those individuals are, were who were actually trying to make him to sell the land. So they- Is there a Ninth Circuit case or a statute or a reg or something that helps us know how a petitioner meets that, how particular they need to be, how specific they need to be in identifying their group? What's the rule that we look to, to figure out if a petitioner has done enough? That's a good question, Yona. I'm not, I don't remember anything of the top of my head. I cannot direct you in any, I don't think about, I'm not sure about any particular regulation, but my understanding there should be some, maybe a case law on that. But that's, once again, it has to be the way I, the way, you know, things work before the agencies that, you know, those things have to be articulated in the brief or, and the agency is not going to articulate the particular social group for petition rights. I think it's, it's pretty well established. So that's why if we look at the, at the, you know, board's decision and look at the immigration judge's decision and we'll look at the record, while he might've mentioned family, but he didn't specifically claim that that was the reason why he was targeted in Mexico. And he specifically said that I was targeted in Mexico and encountered a particular social group and he articulated it as land holders or strategic lands in Mexico. And I think that's probably the reason why we're dealing with this particular group versus the family and the family of members available when in Mexico, which was not really exhausted. He didn't talk about the particularity, didn't talk about social distinction. So it's just not enough just to mention family or in per se, so to say, just a little bit more needs to be done to raise it and present it to the agency and the person Well, he did. I mean, I agree with you that there's no discussion of particularity and social distinction, but he does. And I'm looking at his AR 53 and his addendum to his notice of appeal to the board. He does say, you know, Mr. Bernardo Acosta is the owner of the land, but his entire family is the social group targeted by the persecuting men. That seems like he's, I mean, literally is a statement that his family is the social group. So, I mean, it would be one thing if we had something from the board saying, you know, we don't think that's enough to present the claim to us. But, you know, the board, you know, he's got that statement in there and we just don't have anything from the board on it. I'm not sure why that isn't sufficient for exhaustion. Um, and when I guess the race or when the way when the issues are raised before the board and presenting the world, I present an argument. So the board basically has to address the arguments that were developed. I mean, the same thing with this court. I mean, if if issues raised, but it's not adequately addressed in the brief, the court can find it was waived or abandoned. And just simply stating that here. Right. I mean, like Judge Miller just said, the board didn't actually say we find this to be waived or abandoned or anything. It just there's total silence about a family based social group. And what do we do with that? Well, once again, I mean, if it's if the court finds that just a simple statement in the brief is sufficient to present the argument, which was not raised before, it's not the way to say it, a particular group that was not developed before the agency in the way that all the elements immutability, particularity, social distinction, and didn't give an opportunity to an immigration judge to consider it in the way that it was done with the other group. So in that respect, it just just mentioning in the brief before the board in the way that suggesting that that his family was targeted. And in fact, it's true that they they were targeted because the criminals were trying to make them make him to sell that land. So that's I guess that's in the government's position, it's insufficient to present the argument before the board. So they had something a little bit more has to be done to to appraise the board of the issue of particular social group and really explain why it's a social group, so to say, and why the IG was wrong when he when he found that it was not and it was not a finding by the IG. So he doesn't even challenge and if we look at the brief that the IG made a finding, and it was wrong finding, he just says, Well, I think that basically, I'm also targeted. And then on the count of that particular social group, but he doesn't say how the IG was wrong. Because the IG never reached that decision. The reason why I didn't reach that decision because he never discussed the group never addressing mutability, particularity, and social distinction. And that's the government's position, he needs to develop it, raise it to the board, the issue that the IG what the IG did wrong. And then that that's when the board will address it. Would you briefly address the CAT claim as well? As far as the CAT claim, so there, the first is, what the IG found is that basically, there is a safe relocation, so he can relocate to another part of Mexico, which is a factor. One of the factors that the agency considered when he determined that he failed to show that he would be tortured in Mexico. And the second one is the acquiescence. So as far as safe relocation, it's the record. So there was a discussion here that petition mentions cartels, right? But before the agency, before the board, we talk about criminals and the police. And according to the record, and I direct you to page 604 of the record, the DEA, Drug Enforcement Administration identifies nine major cartels in Mexico, right? We don't know who those people are. We don't know where they, whether he would be able to move to another area where he would be able to live safely, right? Plus he has means to do that. Unlike other individuals in Mexico, he can find a place to where to live in Mexico. You know, with respect to this relocation, he and the family did relocate twice up to 200 kilometers away. And it was testimonies to be believed. And here we have an affirmative credibility finding. They found him and he fled. So 200 kilometers away is not enough. Is 300 enough? I don't know. But it sounds as though these guys would really like the land. It's worth a lot of money. And I bet it's worth them driving 400 kilometers. I mean, I'm not quite convinced by the fact that he can move elsewhere, given that he did move elsewhere 200 kilometers away and they got him. But we don't know who those individuals are. We talk about the bad guys. Oh, yes, we do. From his testimony, he says the same people. It's the black suburbans who are coming after him and saying we would like that land. We know exactly who they are. We may not know their names, but we know it is the it is members of the cartel. That's what he testified to. And we're supposed to believe that. Yes, we were supposed to believe but we don't know which cartel. There are nine major cartels. No, no. We know that it's the same one that's been after him from the beginning. Now, I'm not sure that he needs to tell us that is a Sinaloa cartel. It is the so-and-so cartel. It is these people. And so far, they've been able to find him up to 200 kilometers away from the site of the land. Let's say hypothetically speaking, let's say assume that there are some cartel that controls the area. But does it mean that they can reach him in Cancun or Mexico City in their cruise? Right. Well, I mean, I have to say I'm not a great expert in cartels, but it doesn't take a great sort of stretch of imagination to think that I don't need to be controlling an entire area as a cartel in order to drive 400, 800 kilometers away from here or wherever I am. Just myself. I find the guy and shoot him. I mean, I don't have to control the whole area. All I have to do is find him and shoot him. So the control of the area by another cartel doesn't seem to me to make much difference. Well, according to the record, they actually tore with each other. So it's not, I mean, I guess if we look at the gangs, it's not that it's usual. It's unusual for, let's say, a mass 13 venture into territory of 18th Street gang. I agree with you that there's no de minimis as far as how far can they travel. But that's that's one of the things that the record is. You know, I believe that the record shows that he can safely move to another place in Mexico. But that's what you say, that the record shows he can safely move to Mexico. All I know is that he got 200 kilometers away and it wasn't safe. I don't have anything tells me what happens if he's 400 kilometers away. I have a speculation, but the record doesn't show me that. Well, it's a prediction by the immigration court looking at the evidence that was presented in terms of the record as I identified part of the record stating that basically their major cartels in Mexico, they apparently issues with them fighting each other over control of the territory. And while it is it is unsafe to certain areas in Mexico for some people, might not be the same situation for other people. So basically, it's once again, it's one of the factors that can have determinations. No, I you and I both understand what's in the record. We both read it. Okay, thank you. So if I if the panel doesn't have any more questions, I submit on the brief by the government. Any further questions from the bench? Okay, thank you. Thank you so much. Stay with us. Mr. Romo, two minutes. Thank you, Your Honor. With regard to the cap protections, I think it is extremely important that the court examines that within the context of the actual partnership between the government and the cartel, number one. And there's plenty of cases that the Ninth Circuit has ruled upon by call the holder, Gordon, the holder and the holder that address those issues. And with respect to movement, Judge, I think the government states that there are nine major cartels in Mexico, and that you can move to the jurisdiction of another cartel. First of all, it is difficult to not to find out exactly what jurisdictional lines there are between cartels. But number two, it presumes that you will seek the protection of the other cartel. Because cartels can move, cartel members can move indistinguishably within the country. And they can send people if they find that my clients have moved to a specific area like Cancun, let's say, they can certainly send someone there to kill them. Unless they have sought the rule of law, because they cannot get and seek the protection of the government, which is supposed to protect them. They must hide in order to survive in order to live. So that is the essential problem in this case. Thank you, Your Honors. Okay, thank thank both sides. For your arguments in both of these two cases, the son and the father and the case now of the father Bernardo Acosta Peralta is now submitted for decision. Thanks very much. Thank you so much, Your Honors.
judges: W. Fletcher, Miller, Hunsaker